May it please the Court, Holly Sullivan on behalf of Mr. Alonso-Prieto. Mr. Alonso should not have received criminal history points or additional criminal history category increase based on a state conviction that was part of the same course of conduct as his federal conviction. The District Court began with the wrong criminal history category and had placed him in a criminal history category of 5 based on allotting 3 points for that state court conviction. That state court conviction was the same course of conduct as the federal conviction. In state he pled guilty in 2008 for conduct that began in early 2007. That conduct was him posing as an attorney and adopting this attorney's name and through that making a threatening letter, threatening communications to a company that he had a binder that had personal information from their employees and was attempting to get a payment in order to not turn that binder over to the Department of Homeland Security or sell the information in that binder to unknown people in Mexico. During that same time, he had a similar scheme and that scheme was the basis for the federal charges. Under the federal charges, he again posed as that same attorney and was taking money from people who were immigration detainees in order to represent them in immigration court. At times he did actually represent them in immigration court. In other instances, he posed as their immigration counsel and frankly did nothing or had communications with family members. The two schemes are similar. One, obviously he used the same name and the same purpose. He was putting himself out as being an attorney and was having people rely on his status as an attorney in order to give him money. One through the threats to the Southland Box Company in the state court and one to immigration detainees in the federal court. Additionally, there's the same pattern of misconduct. It is this scheme in order to rely on his representation as an attorney in order to obtain monies or the same property from both of the injured parties. Again, they also had the same time frame. It was early 2007 when both of these schemes happened. The federal side was actually investigating him doing this at the time that the state court decided to file charges. Well, what other than the fact that he represented himself to be an attorney, what is the commonality other than that? Well, he actually was holding himself out to be the exact same attorney in both instances. The same name and said he was an attorney. In state court, when he contacted the Southland Box Company, he contacted them and said, I am an attorney. I have come into possession of money. Other than the fact that he represented himself as an attorney by the name of X, what else is there in common between the two schemes? The only difference between the two is that he is an attorney. So it's not similar victims. But in both schemes, he is holding himself out as an attorney in order to... But didn't he also say that he was an attorney for this amicus curiae group in both instances? Correct. And didn't he say with regard to the Southland Box case that he had clients who worked for Southland Box? There was some implication that he had immigration clients. It seemed to be that what he was threatening the Southland Box people with was immigration related. I believe that's the case. The Southland Box information is not incredibly clear to me what the threat is. He said that he could turn the information over to the Department of Homeland Security and that he could sell that information, that it was public employee information that he could sell in Mexico for a substantial sum of money. So in both cases, he's using his status as an attorney in order to defraud people of money in both of the cases. In the federal court, it's based on representing people in immigration court or immigration detainees. And in the state court, it was pretending he was an attorney in order to have this company pay him fees to not disclose potentially immigration status, I guess, to the Department of Homeland Security. What is the standard review here? If we thought this was a very close case, would we defer to the district court? In this case, because the district court, I understand the government's arguing that there is waiver here. And in this case, the district court started with the wrong guideline range. And although the district court may have given the same sentence, even if he, even if she started with the correct guideline range, we can't presume that the sentence would have been the same. So the – it is preserved error. So this court should – That's not really what I was asking you. What I was asking you is, as to the question of whether this is related content, it seems to me that it's a little more related than the cases which were unrelated and a little less related than the cases that were related. So do we defer to the district court at that point? I don't believe that the court should be – I believe the court should be conducting their own review of that circumstance. I don't believe that it's full deference to the district court's – Your brief says the standard's clear error in terms of determination of the facts and application of the guidelines is abuse of discretion. Are you backing away from that? No, but it's – no, I'm not backing away from that. But in looking at other similar cases, and the one case – the King case, whether the error is – they found in that case that it was a clear and obvious error. I guess it wouldn't – if the court's position is that it's just a little bit more similar than those cases, it wouldn't be clear and obvious. But in the King case, though, if I'm remembering it right, the court found that there wasn't any clear error when the court found the two schemes or whatever they were to be related. So the standard's clear error that the court applied in that case. And the fact that they found that there was no clear error in finding the schemes related doesn't really help you a whole lot in having us find that it was clear error to find that they weren't – that they were related. In other words, it's the flip side of the question. It is the flip side of the question. And in looking at the – it's a factual determination in looking at the similarity of the two cases, in the State case and the Federal case. And although there are similar types of cases, in looking at the King case, even arguably the Mullen case could be a similar type of case or similar type of analysis in looking at whether or not the two cases are similar or the same course of conduct. The court is committing error – the district court is committing error in relying on the incorrect guideline range. And so starting with the incorrect range, that is clear error here. The – I'm sorry, just to address one small point. The government did argue that there was a waiver here. And I don't think that that's appropriate. The position for a waiver is if there was an intentional relinquishment or abandonment of a right. And here, both the government, the court, and defense counsel, everyone treated this error as being a preserved issue. There was an objection made. There was a briefing. The court also addressed it at length at sentencing. And so to say that there was a waiver after the court had denied the objection and made a clear ruling on the objection, I don't think is appropriate. It's – Do you want to save your last minute and a half? Yes. Thank you, Your Honor. Okay. Good morning, Your Honors. May it please the Court, Mark Yohalam on behalf of the United States. I want to discuss two points. One is why the district court's ruling was not clear error. But first, I want to talk about why, as a matter of law, defendant's claim must fail. Defendant relies upon sentencing guideline section 1B1.3A2. It talks about this being in the same course of conduct. However, section 1B1.3A2 applies solely with respect to offenses of a character for which section 3D1.2D would require grouping. Section 3D1.2D, Your Honor, expressly excludes extortion offenses from grouping. For that reason, we don't even get to this question of whether or not these were part of the same course of conduct. That argument you bring is true. It's not, Your Honor. And the reason why is, frankly, because I didn't realize this part of 1B1.3A2 until this morning while prepping for argument. Otherwise, I would have submitted a 28J letter on it. Obviously, this Court can affirm on any basis supported by the record below. I can't explain why the parties didn't identify this in the brief. If the defendant said something like that, the government would say it's waived because it's not in the briefs. An appellant, of course, has to preserve arguments by raising them below and also has to preserve them in the briefing. I think as an appellee, it's slightly different. This Court is judging whether the district court created an error, not whether the briefing was as thorough as it could have been. In any event, it seems to me this is just a threshold question. You can't say that the district court misapplied Section 1B1.3A2 when that section expressly does not apply to extortion, which is the state offense. I don't want to belabor this point. I do think it's dispositive, but, you know, because it's not in the briefing and because Judge Berzon raised this question about clear error, I'd like to just segue to that, although I'm certainly happy to discuss the guidelines. Kagan. As to clear error, why isn't this isn't a fact question, is it? Would it be subject to the abuse of discretion or not to clear error? I mean, you might be in the same place, but I would think it's more likely abuse of discretion than clear error. I would point the Court to the Hahn decision, which is cited in the briefs. It's 960F2nd903. And Hahn says, whether conduct extraneous to an offense of conviction is part of the same course of conduct or common scheme of plan so as to be considered relevant conduct is reviewed for clear error. So Hahn is explicit about it. King applies the clear error standard. Asbury, which predates them, talks about due deference. And I think what that means, and I think your question is right, Your Honor, which is that all of this is abuse of discretion, and there could be circumstances where this is essentially a legal question. For example, extortion is excluded from being relevant conduct under the guidelines. So if the district court had found this to be relevant conduct and then defendant had argued on appeal the point that I just raised, that would be a legal question reviewed de novo, even though it goes to whether this would qualify as relevant conduct. But as to whether there is sufficient similarity between the two offenses. Kagan. Well, this is an application of the Guideline to the Facts, and for that we were we applied deference. And it doesn't – because it's not – you're not – there's no fact in the sense of what happened. And there's not even a fact in the sense of a mindset or anything else. There's just – it's a question of is this what's meant by a relationship under the statute. So in a sense, it's ultimately a legal rule. How much relationship do you need? I don't think so, Your Honor. First, I would say Hahn and King bind this court. Now, I – I'm not sure this matters for you. All right. Go ahead. Yeah. My second point would be that under the Hinkson case, where the legal standard isn't in dispute, which it isn't here, then it really does just boil down to the same question, which is whether the district court's determination was illogical or implausible in light of what's in the record. This was not clear error. And I want to focus in on what the Laudam and Buchanan cases and the Hahn case talk about. All those are cases cited in the briefs. And there they say, the two offenses were entirely different crimes, and the state conviction resulted from a discrete, identifiable, illegal act that was not an integral part of the federal offense. That is exactly describing the situation here. The state crime was an extortion. It relied on threat, not on deceit. It involved an accomplice, whereas this case, the defendant was a sole actor. It targeted a company rather than individual immigrants. It used only a single false identity in the state case, whereas he relied upon two false identities in the federal case, Peterson and Powell. The extortion with the company, was that related to the names of the employees who were immigrants? It's unclear what the exact nature of the extortion is. As I understand it, the defendant came into possession of a stolen employee directory that included, like, Social Security numbers and so forth. I think it's unclear exactly. He had clients who worked for the company. He said that's what the complaint, the complaint or the information said. Yeah. He may have represented that. I'm not sure whether that is or isn't. No, that's what the government represented, and, in fact, it's the church. This is a felony complaint. It says that the he said he was Kenneth Pearson with Amicus Curiae. So it wasn't just that he was using the same name. He was also using the same group. And he said the group had several clients who worked for the Southman Box Company and that he had several books and wanted to sell them back to the company. I surmise that means that's where he got them, but who knows. And if not, he's going to give it to Homeland Security. That's the government's accusation in the other case. Yes, Your Honor. The State government accusation. Right. The State government. I understand that. And there's also a report in the government's excerpts of record that sets out the facts in a little bit more detail. My understanding is that basically the threat is I will do one of two things. Either I will turn this over to Homeland Security, and I agree that probably the inference is that some of the employees may have been undocumented. Or alternatively, I'm going to sell your employees identification information so that they will become victims of identity theft. The fact that he's a lawyer doesn't really have any bearing on that threat, any more than if he walked into a bank and hinted a note to a teller that said ---- But the charge was unauthorized practice of law. It was unauthorized advertising or practice of law. At least one of the earlier charges, maybe it was dropped, was unauthorized practice of law. At least looking at the PSR, Your Honor, it looks like the State offense was actually advertising or practice, and that it was the holding himself out as a lawyer was part of ---- you know, that was the ---- Temp 5, the crime of unauthorized practice of law. Looking at the PSR, Your Honor, at ---- But I'm looking at the actual complaint. I understand. The State court. But are we ---- so you're asking about unconvicted charges that may have been dismissed? Possibly. Or possibly the State offense isn't fully described. The complaint may not have described the entire scope of that State offense. Right. In any event, Your Honor, it's not clear to me, based on the facts that are in the record, that this would be any different from going into a bank and saying, I'm Kenneth Peterson, I'm an attorney, and I have a gun. Give me the money in your drawer. In both cases, he would be asserting that he was Kenneth Peterson. But the force of the threat comes not from being attorney. It comes from having the binder. If he had merely sent a letter to Southland Botts Company saying ---- Well, that's apparently not what the State court thought in its charging document. No. I think that it is relevant. They viewed it as an additional aggravating circumstance, that in committing the crime, he had held himself out as an attorney, that he had said, I'm an attorney from the Amicus Curiae Foundation. But that the ---- he would not have been able to The sort of gravamen of the extortion was not being an attorney. If he had called them up and said, I'm Kenneth Peterson, I'd like to let you know I represent some of your employees, please give me a million dollars, they would have said, why? The force of the threat came from the binder, which had nothing to do with being a lawyer practicing law. He could have called up and said, I'm Kenneth Peterson, I'm an auto mechanic. When I was repairing one of your employees' cars, I came across a binder that I'm going to turn it over to the authorities. In either case, the threat would have had the same force. It was a fairly de minimis addition that claiming to be a lawyer. If you look at the Scarano case, there they talk about substantial unrelated conduct in the State offense. And here there clearly is substantial unrelated conduct. The binder is the force of the threat. That is ---- there's nothing comparable to the binder in the Federal offense. I'm sorry, you're out of time. If you want to have a final sentence or something. A final sentence would be that he held himself out and practiced as a lawyer in the Federal offense where he extorted using a binder in the State offense. It is not clear error to treat those as different crimes. First, as far as the extortion being excluded, I would ask for an opportunity to brief that before this Court. It hasn't been raised until today, and so I would ask for an opportunity to address that or to brief that, if that's specific. But as the Court has pointed out, it wasn't solely the extortion offense in State court that was the charge. He had the extortion offense, the threatened letter with the intent to extort, and also the unauthorized practice of law or the unauthorized advertising to the practice of law. And the conviction was only for extortion? Is that what happened? No, the conviction was for both. It was both the threatening letter with the intent to extort and the unauthorized practice of law. And the government's correct that he could have done the threat solely by having the binder. But he didn't. He held himself out as an attorney in order to do the threats. And that was the impetus or the force behind him being able to tell this company, I have this information, I'm going to go to the Department of Homeland Security. And at one point even said he had contacted some person, Morales, I think, from the Department of Homeland Security, but that he was going to hold off on turning the binder over. So it was based upon his representations of how he came to possess this binder and what he was going to do with the binder with him being an attorney, not that he had just called and said, I came upon this information, and I'm going to turn it over. Thank you, counsel. Thank you, Your Honor. The case just argued will be submitted. The Court will take a brief recess before the final argument.
judges: Kennelly, Reinhardt, Berzon